Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8591 | **DATE** | 3/23/2004 |
| **CASE TITLE** | James T. Moton vs. Maria Protine et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss Plaintiff's Complaint [Doc. No. 18]; [Doc. No. 26]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Defendants' motions [Doc. No. 18]; [Doc. No. 26] to dismiss plaintiff's complaint are GRANTED in their entirety. Additionally, all claims against Maria Protine and Doris C. Moore are dismissed in their entirety. All other motions are moot and terminated. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 2 5 2004 | 36 |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | JXM | |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | slf (lc) courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 5 2004

JAMES T. MOTON )
)
        Plaintiff, )
) No. 02 C 8591
v. )
) HONORABLE DAVID H. COAR
MARIA PROTINE, MANAGER )
BROOKHAVEN APARTMENTS; THE )
VILLAGE OF GURNEE POLICE )
OFFICERS, TOKARZ BADGE #135, )
DEPARTE, BADGE # 122; ROBERT )
JANUEZ; B. HAXALL; LAKE COUNTY )
STATES ATTORNEY; AND DORIS C. )
MOORE )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Before this Court are two motions to dismiss James T. Moton's ("Moton" or "Plaintiff") Complaint. The first motion was filed on behalf of B. Haxall, a Lake County Assistant State's Attorney. The second motion to dismiss was filed on behalf of Brookhaven Apartments, the Village of Gurnee, and several Police Officers of the Village of Gurnee: Tokarz (Badge Number 135), Deperte, (Badge Number 122), and Robert Januez.[1] For the reasons set forth below, Defendants' motions to dismiss are GRANTED. Additionally, for the reasons set forth below, Plaintiff's claims against Maria Protine and Doris C. Moore are dismissed in their entirety.

---

[1] All defendants will be referred to collectively as "Defendants"

-1-

## FACTUAL BACKGROUND

Moton is a resident of Brookhaven Apartment Complex ("Brookhaven"), a federal housing project located in Gurnee, Illinois. Plaintiff's Complaint arises from three separate incidents that occurred in Brookhaven on January 5, 2001, March 29, 2001, and March 30, 2001. All three incidents involve disputes with Doris Moore ("Moore"), Moton's neighbor. Each incident will be addressed in turn.

### I. January 5, 2001 Incident

On December 1, 2000, Moore made a complaint against Moton to the Gurnee Police Department, and reported that Moton banged on the walls between their apartments, thereby causing a disturbance. (Pl. Comp. ¶ 10). Gurnee Police Officer Tokarz (Badge Number 135) ("Tokarz") responded to Moore's Complaint and issued a disorderly conduct citation to Moore and a summons to appear in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois on January 5, 2001. (See Pl. Ex. E). Neither Tokarz nor Moore appeared in court on January 5, 2001, and the case was dismissed. (Pl. Comp. ¶ 10) Moton claims that the intimidation and harassment related to the disorderly conduct citation caused Moton time, pain, suffering, and money, and alleges that it was an abuse of police power for Tokarz to issue the citation to him. (Pl. Comp. ¶ 11).

### II. March 29, 2001 Incident[2]

On the evening of March 29, 2001, Moton called the Gurnee Police Department to report a disturbance in Moore's apartment, which he believed was being caused by Moore's son.

---

[2] Unless otherwise stated, all facts surrounding this incident are taken from Plaintiff's Exhibits A-C, A-D, and A-E, Moton's personal account of the March 29, 2001 incident.

About five minutes after calling the police, Moton went outside to wait for their arrival. Approximately ten minutes after going outside, Moton noticed a police car approach his wing of the apartment complex, which he believed was responding to his call. However, the police car turned into another section of the complex. Moton went to search for the police car, but as soon as he turned the corner, he saw Moore come towards him in an aggressive manner. Moore ran towards Moton, pushed him back with her chest, and used explicit language towards him. Moton believed that Moore wanted to start a physical altercation with him; therefore, he took his right hand and pushed Moton away from him, and attempted to walk away. However, Moore became more aggravated, began screaming, and Moore, her two sons, and a friend of one of the sons surrounded Moton. Moore told one of her sons to retrieve a stick from the house, which he did. The friend of Moore's son blocked the sidewalk in an attempt to prevent Moton from entering his apartment. Moton began to back up, and as a consequence, fell backwards. Moore's sons kicked Moton in his side, and continued to attempt to hit him. Moore advanced towards Moton, and swung the stick towards Plaintiff, hitting him two or three times in the back. Moton blocked Moore's advances with his elbow. Moore struck Moton in the nose with her stick, which caused the Plaintiff to bleed profusely. Moton claims that the police in the squad car he observed prior to this incident should have seen and/or heard the altercation, but failed to do anything to stop it.

Approximately thirty-five minutes after Moton called the police, Officer Deperte (Badge Number 122) ("Deperte") arrived on the scene, and Moton described the altercation to Deperte. After receiving Moton's version of the events, Deperte went to Moore's apartment to speak with her. Subsequently, Deperte returned to Moton's apartment and asked him if he would like an ambulance due to his significant blood loss, but Moton refused. Immediately thereafter, Deperte

spoke with some of Moton and Moore's neighbors, including Moore's sons, in order to obtain more information about the altercation, but he could not find any independent corroborating witnesses. Subsequently, Deperte issued battery citations to Moton and Moore. (Pl. Ex. A-H). Later that evening, Moton went to the hospital, where he was informed that he had a hairline fracture to his nose. Moton claims that Deperte filed false charges against him, and abused his authority as a police officer by issuing a citation for battery to him. (Pl. Comp. ¶ 14).

### III. March 30, 2001 Incident[3]

On March 30, 2001, the Gurnee Police Department received a complaint from Moore that Moton knowingly faced his stereo speakers against the wall adjacent to Moore's apartment, and played his music at a loud volume in order to disturb her. Based on this Complaint, three police officers, including Police Officer Robert Januez ("Januez"), went to Moton's residence. Moton answered the door, and the police informed him that they wanted to check the configuration of his stereo equipment. The officers asked Moton if they could come into his apartment. Moton asked the officers if they had a search warrant. Januez replied that they did not need a search warrant, because they had a complaint, and that they were coming in to arrest him. Plaintiff replied "okay," and the officers walked into his apartment, arrested Moton, and charged him with disorderly conduct. (See Pl. Ex. C-A; See also Pl. Ex. C-E). Subsequently, Officer Januez took Moton to the police station, processed him, and brought him home in about one hour. On July 6, 2001, the court for the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, found Moton guilty of disorderly conduct, in violation of 720 ILCS 5/26-1(a)(1). (Pl. Ex. C-M).

---

[3] Unless otherwise noted, all facts surrounding this incident are taken from Plaintiff's Exhibits C-A and C-B, Plaintiff's personal account of the events of March 30, 2001.

-4-

The court ordered supervision of Moton through and including December 28, 2001, and for Moton to pay a fine of $100. (Pl. Ex. C-L). Additionally, the Court ordered Moton not to play his music so loud as to alarm and disturb Moore or any of his neighbors. (Pl. Ex. C-M).

Plaintiff's claims against James B. Haxall ("Haxall"), a Lake County Assistant State's Attorney, arise from Court proceedings related to Moton's disorderly conduct citation. Moton contends that Haxall failed to adequately investigate the charges against him, and conspired with Moore, Maria Protine ("Protine"), manager of Brookhaven, and Januez to frame Moton, in order to force a finding of guilty on the disorderly conduct charges. (Pl. Comp. ¶ 23).

## DISCUSSION

### I. Legal Standard for a Motion to Dismiss

A complaint should not be dismissed under Fed. R. Civ. P. 12 (b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court "must accept all well pleaded facts as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir. 1987). Additionally, Moton has filed his complaint pro se, and when construing a pro se complaint, the court must construe the complaint more liberally than a complaint prepared by an attorney. Whitford v. Boglino, 63 F.3d 527, 535 (7th Cir. 1995). However, the complaint must still allege facts that provide an adequate basis for each claim. Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1989). Additionally, all documents and exhibits attached to the Complaint become part of the pleadings for all purposes. See Fed. R. Civ. P. 10(c).

## II. Analysis

The claims in Moton's Complaint can be divided into two broad categories. Moton alleges violations of: (1) the Federal Fair Housing Act by Maria Protine ("Protine") in her capacity as manager of Brookhaven, including allegations of conspiracy under 42 U.S.C. § 1985 ("Section 1985"); (2) the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (" Section 1983") by various officers of the Gurnee Police Department, and Lake County Assistant State's Attorney Haxall, including allegations of Haxall's conspiracy with Protine and Moore to frame Moton in violation of Section 1985. All allegations will be addressed in turn.

### *A. Plaintiff's Claims Under the Fair Housing Act*

Plaintiff's Complaint alleges violations of the Federal Fair Housing Act under 42 U.S.C. §§ 3601, 3617, and 3631 (Pl. Comp., ¶¶ 1-4). Plaintiff alleges that Protine, a white woman, in her capacity as manager of Brookhaven Apartments, sought to remove Moton, a black man, from his apartment at Brookhaven because of his race, in violation of various sections of the Fair Housing Act. As an initial matter, Sections 3601 and 3617 do not confer any rights to sue. Section 3601 is a declaration of policy only, and confers no power to sue. Further, Section 3631 empowers a government to pursue criminal charges and penalties for violations of the Fair Housing Act under Chapter 18 of the United States Code. Therefore, the Court will address whether the Plaintiff has stated a claim for relief under Section 3617 of the Fair Housing Act.

Section 3617 states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protection by section 3603, 3604, 3605 or 3606 of this title.

Courts have interpreted Section 3617 to apply to threatening, intimidating, or extremely violent conduct, designed to drive an individual out of his home. Halprin v. Prairie Single Family Homes of Dearborn Pk. Assoc., 208 F.Supp.2d 896, 903-4 (N.D. Ill. 2002). Acts that have been found to provide a claim under Section 3617 include cross-burning (Johnson v. Smith, 810 F.Supp. 235, 238-39 (N.D. Ill. 1992)), firebombing homes or cars (Stackhouse v. DeSitter, 620 F. Supp 208 (N.D. Ill. 1985)), throwing Molotov cocktails Byrd v. Brandenburg, 922 F.Supp. 198, 200-01 (N.D. Ohio 1996)), or physical violence used to induce an individual to leave his home because of his race. (Seaphus v. Lilly, 691 F.Supp. 127, 139 (N.D. Ill. 1988)).

Moton has presented no facts that would provide him with a claim under Section 3617 of the Fair Housing Act. Moton has failed to state any allegations that show racial animus or discrimination against him with respect to his housing. Further, the incidents that occurred on January 5, March 29, and March 30, 2001 contain no hint of intimidation or interference with his housing because of his race. The exhibits Plaintiff provides clearly demonstrate that these incidents were the result of a mutual dispute with his neighbor, with some incidents aggravated by Moore's behavior, and some incidents aggravated by Moton's behavior. None of the circumstances surrounding these incidents remotely suggest that any of the defendants sought to deprive Moton of any the rights provided to him under the Fair Housing Act. Therefore, Plaintiff has not stated a claim for relief under the Fair Housing Act.

1. Plaintiff's Conspiracy Allegations Under 42 USC § 1985[4]

In his Complaint, Moton alleges that Protine and Moore (who is a black woman) conspired to deprive him of his rights under the Fair Housing Act, thereby engaging in a unlawful conspiracy under 42 USC § 1985. ("Section 1985").[5] There are four elements necessary for a claim of civil conspiracy under Section 1985: (1) a conspiracy, (2) for purpose of depriving, either directly or indirectly, any person or class of persons of equal protection under the laws, (3) an act in furtherance, and (4) an injury. Heideman v. Wirsing, 840 F. Supp. 1285, 1201 (W.D. Wis. 1992) (citing United Brotherhood of Carpenters & Joiners Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). However, the Court has determined that there was no violation of any of Moton's rights under the Fair Housing Act. Therefore, Plaintiff cannot sustain a claim under Section 1985, as there is no underlying constitutional deprivation or injury. See Love v. Bolinger, 927 F.Supp.1131, 1139 (S.D. Ind. 1996) ("Plaintiffs' § 1985 claim is defeated by our holding that they have not suffered any constitutional deprivation, or injury."). Therefore, Moton

---

[4] Although there is no motion from Protine (in her individual capacity) to dismiss Plaintiff's Complaint, and Moore has yet to respond to Moton's Complaint, the Court, on its own motion, will address the sufficiency of Moton's claims against Protine and Moore.

[5] Section 1985 (3), in relevant part, states:
> If two or more persons in any State or Territory conspire or go in disguise on the highway or premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing all persons within such State or equal protection of the laws...the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more conspirators.

fails to state a claim for relief alleging a conspiracy by Protine and Moore to violate his rights under the Fair Housing Act.

### *B. Plaintiff's Claim Under 42 U.S.C. § 1983*

Moton contends that under color of law, several members of the Gurnee Police Department infringed his Fourth and Fourteenth Amendment rights. Section 1983 "is not itself a source of substantive rights," but rather provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979). The first step in a Section 1983 claim is to identify the specific constitutional right allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994). Therefore, in order to establish a valid claim under 42 U.S.C. § 1983 ("Section 1983"), Moton must establish that certain members of the Gurnee Police Department, under color of law, violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

Police officers are granted qualified immunity from civil suit. "Public officials performing discretionary functions are generally entitled to qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sparing v. Village of Olympia Fields, 266 F.3d 684, 687 (7th Cir. 2001) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). Qualified immunity exists to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343 (1986). In order to determine whether a defense of qualified immunity is valid, courts must: (1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right; and (2) if so, determine whether the right was clearly established at the time of the alleged violation.

Saucier v. Katz, 533 U.S. 194, 201-2 (2001). Therefore, the Court will address whether Plaintiff was deprived of his Fourth and/or Fourteenth Amendment rights, and if necessary, the Court will determine if that violated right was clearly established at the time of the alleged violation.

### 1. Plaintiff's Fourth Amendment Claims

Moton's Fourth Amendment claims contend (1) Officer Tokarz lacked probable cause to issue a disorderly conduct citation to Moton on December 1, 2000; (2) Officer Deperte lacked probable cause to issue a battery citation to Moton on March 29, 2001; and (3) Officer Januez lacked probable cause to effectuate an arrest of Moton on March 30, 2001.

When evaluating a Section 1983 Claim that arises under the Fourth Amendment, the Court must determine whether the officer had probable cause to make the arrest. Gerstein v. Pugh, 420 U.S. 103, 111 (1975). "Probable cause is a function of information and exigency." BeVier v. Hucal, 806 F.2d 123, 127 (7th Cir. 1986). Probable cause requires showing a probability or a substantial chance of criminal activity, not the actual showing of criminal activity. Illinois v. Gates, 462 U.S. 213, 244 (1983). "Probable cause exists at the time of arrest when reasonably trustworthy information, facts and circumstances would lead a prudent person to believe that a suspect had committed or was committing a crime." Neiman v. Keane, 232 F.3d 577, 580 (7th Cir. 2000).

*a. January 20, 2001 and March 29, 2001 Incidents*

Plaintiff's claims concerning these two incidents are similar, as Moton contends that the officers involved did not have probable cause to issue citations to him. However, based on Plaintiff's own documents, it is clear that the officers had probable cause to issue citations on January 20 and March 29, 2001. The documents that Plaintiff provides for January 20, 2001

show that the Gurnee Police Department received a complaint from Doris Moore concerning Plaintiff's consistent banging on her walls. (See Pl. Ex. E). The Seventh Circuit has repeatedly held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause. Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000). Therefore, Plaintiff cannot claim any set of facts that would indicate that the Gurnee Police Department did not have probable cause to issue a citation for Disorderly Conduct. Secondly, in Plaintiff's documentation of the events of March 29, 2001, Moton admitted to Officer Deperte that he pushed Moore and Moore admitted that she hit Plaintiff in the nose. Subsequently, Officer Deperte issued battery citations to Moton *and* Moore, as he could not find an independent witness to corroborate the events of that evening. (See Pl. Ex. A-H) Plaintiff's own documentation of the events of March 29, 2001 preclude him from claiming any set of facts that would indicate that Officer Deperte lacked probable cause to issue a battery citation.

### b. March 30, 2001 Incident

Because the events surrounding March 30, 2001 involve the arrest of Moton in his home, they must be analyzed under a different legal standard than the two preceding events. Moton alleges a Fourth Amendment violation because the Gurnee officers made a warrantless arrest. However, the Fourth Amendment is not violated when the police make an arrest for a misdemeanor offense without a warrant, even if that offense did not occur in the officer's presence, and/or did not involve a breach of the peace. Woods, 234 F.3d at 992. [6] The court

---

[6] Under Illinois law, A person can engage in disorderly conduct when he knowingly, "[d]oes any act in such unreasonable manner as to alarm another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Therefore, "breach of the peace" is an element of disorderly conduct, and even under the old common law, the police could effectuate a warrantless arrest for this offense. Woods, 234 F.3d at 991-92. Additionally, warrantless

-11-

must focus its inquiry on whether there was probable cause for the arrest. Id. As stated in the discussion of the January 20 and March 29, 2001 incidents, a report from a single, credible victim or eyewitness can provide the basis for probable cause. Woods, 234 F.3d at 996. Therefore, Januez and the officers working alongside him had probable cause to arrest Moton.

Secondly, the Court must determine whether Moton has claimed any set of facts that allege a Fourth Amendment violation due to the officer's entrance into his apartment. Generally, absent exigent circumstances, police may not enter a person's home to arrest him without an arrest warrant. U.S. v. Berkowitz, 927 F.2d 1376, 1385 (7th Cir. 1991). However, courts generally uphold arrest "where the police go to a person's home without a warrant, knock on the door, announce from outside the home the person is under arrest when he opens the door to answer, and the person acquiesces to the arrest." Id. at 1386. Based on Plaintiff's own account of the events surrounding his arrest on March 30, 2001, the police followed the appropriate procedures: the police went to Moton's home without a warrant, knocked on the door, announced from outside his home that he was under arrest, and Moton stated "okay." It was only after Moton consented to the arrest that the officers entered the home to remove Moton's speaker from against the wall. The police had the authority to briefly enter Plaintiff's home to complete the arrest. See Berkowitz, 927 F.2d at 1387.[7]

---

misdemeanor arrests are authorized by Illinois law. See 725 ILCS 5/107-2.

[7] Additionally, Moton contends that the officers violated his Fifth Amendment rights by failing to read Miranda warnings to him. However, in a recent decision, the Supreme Court held that there is no cause of action under Section 1983 for violations of Miranda and the Fifth Amendment privilege against self-incrimination. Chavez v. Martinez, 123 S. Ct. 1994, 1998 (2003). Further, there was no violation of Moton's rights under the Fifth Amendment. For Miranda rights to be triggered, "a subject must be 'in custody' and subject to 'interrogation.'" United States v. Burns, 37 F.3d 276, 280 (7th Cir. 1991). Plaintiff's own exhibits demonstrate

There being no set of facts under which Plaintiff can claim a violation of his Fourth Amendment rights for any of the three incidents, the Court need not address the issue of whether there was a clearly established right that was violated.[8]

### 2. Plaintiff's Fourteenth Amendment Claims

Moton's Complaint claims that the police violated his rights under the Fourteenth Amendment by arresting him solely because of his race. Under Section 1983, to state an Equal Protection claim, the Plaintiff must allege that the state actor purposefully discriminated against him because of his identification with a particular disadvantaged group. Payton v. Rush Presbyterian St. Lukes Medical Center, 184 F.3d 623, 632 (7th Cir. 1999) (citing Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir. 1994)). Moton must demonstrate that "the action taken by the state...was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1983). This is a more exacting standard than having to demonstrate the officers lacked probable cause for their actions. Id.

The Court has already determined that the Gurnee police officers had probable cause to issue citations to Moton and to arrest him for the citation issued on March 30, 2001. Plaintiff's own exhibits show that the officers were well within the bounds of their duties, and that the

---

that he was taken to the police station to be processed, and no subsequent interrogation ensued. (Pl. Ex. C-B). Therefore, since Moton was not interrogated, the duty to provide him with Miranda warnings was not triggered.

[8] To the extent that Plaintiff alleges violations of his rights under the Seventh Amendment, that claim is dismissed for failure to state a claim upon which relief can be granted. Plaintiff's own evidence documents that he knowingly waived his right to a jury trial, for the court proceedings arising from the events of March 30, 2001. (See Pl. Ex. C-J).

-13-

police had legitimate reasons to take the actions they did. Therefore, Plaintiff can claim no set of facts upon which relief can be granted on his Fourteenth Amendment claim.[9]

### C. Plaintiffs' Suit Against B. Haxall, Lake County Assistant State's Attorney

In his Complaint, Plaintiff claims that B. Haxall, a Lake County Assistant State's Attorney, deliberately tried Plaintiff on the words of Doris C. Moore, Maria Protine, and Officer Januez under a scheme of perjury, in order to frame Moton for the charge of Disorderly Conduct. (Pl. Comp. ¶ 20). A state prosecutor is absolutely immune from civil damages for all prosecutorial activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). In Imbler, a prosecutor was granted absolute immunity for the use of false testimony and the deliberate suppression of exculpatory evidence. Id. at 431. Therefore, even if Plaintiff's claim is correct, and Haxall knowingly procured the false testimony of Moore, Protine and Januez in order to obtain a conviction, Haxall is immune from suit. Therefore, Plaintiff can claim no set of facts that would allow him state a claim for relief against Haxall.[10]

---

[9] Plaintiff also names the village of Gurnee as a defendant, apparently under a theory of *respondeat superior*. *Respondeat Superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 663, n.7 (1973). Municipal liability attaches only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" Id. at 690-91. Therefore, Plaintiff's Complaint fails to state a claim for relief against Gurnee for two reasons: (1) he cannot bring suit against them under a theory of *respondeat superior*; and (2) there is no unconstitutional policy that the city adopted and promulgated. Therefore, Moton's claim against the village of Gurnee is dismissed.

[10] Further, to the extent that Moton alleges a conspiracy by Protine and Moore to bring forward false charges to the police against Moton, as with Moton's conspiracy claims against Protine and Moore for violations of the Fair Housing Act, these conspiracy charges fail, as there is no underlying deprivation of a constitutional right. See Love v. Bolinger, 927

-14-

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in their entirety. Additionally, all claims against Maria Protine and Doris C. Moore are dismissed in their entirety. This case is closed.

Enter:

David H. Coar
United States District Judge

Dated: **March 23, 2004**

---

F.Supp. 1131, 1139 (S.D. Ind. 1996) ("Plaintiff's § 1985 claim is defeated by our holding that they have not suffered any constitutional deprivation, or injury."). Additionally, to the extent that Moton alleges other constitutional violations against Protine and Moore, those claims fail. Protine and Moore are not "state actors," as they are not private actors who are "willful participants in joint action with the State or its agents." See Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 435 (7th Cir. 1986) (quoting Dennis v. Sparks, 449 U.S. 24, 28 (1980)).